UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In the Matter of S.E.O. and
Y.O.[1]

NURETTIN OZALTIN,

        Petitioner,

  -v-                                                     No.  12 Civ. 2390 (LTS)

ZEYNEP TEKINER OZALTIN,

        Respondent.

--------------------------------------------------------x

<u>MEMORANDUM ORDER</u>

On March 30, 2012, Nurettin Ozaltin ("Petitioner" or the "Father") filed this Petition pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601 <u>et</u> <u>seq.</u>, seeking the return of his two minor children, S.E.O. and Y.O., to Turkey, and the enforcement of court-ordered visitation so long as the children remained in the United States.  On April 2, 2012, the Court issued an order, directing Respondent Zeynep Tekiner Ozaltin ("Respondent" or the "Mother") to show cause as to why the Petition should not be granted.  On April 30, 2012, and May 1, 2012, the parties appeared before the Court for an evidentiary hearing.  Based on the testimony at the hearing and the parties' extensive written submissions, the Court issued an Opinion and Order on June 5, 2012 (the "June 2012 Order"), granting the Father's Petition and directing the Mother to return the children to Turkey by July 15, 2012.  In the June 2012 Order, the Court held that, because it was granting the Father's

---

[1]      Consistent with Fed. R. Civ. P. 5.2(a), only the initials of the minor children involved are used in the caption and in the body of this document.

Petition, "[the Mother] will be required to pay any necessary costs [the Father] incurred in connection with [the] action." (June 2012 Order at 15.) On appeal, the Second Circuit affirmed this Court's decision ordering the return of the children to Turkey. The Second Circuit, however, vacated this Court's June 2012 Order insofar as it determined that the Mother would be required to pay "any necessary costs," and remanded the action for further proceedings. See Ozaltin v. Ozaltin, 708 F.3d 355 (2d Cir. 2013). Now before the Court is the Father's renewed application for costs. Familiarity with this Court's June 2012 Order and the Second Circuit opinion is presumed. The Court has reviewed carefully all of the parties' submissions and, for the following reasons, the Father's application for costs is denied.

### DISCUSSION

The Hague Convention provides that, "[u]pon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities *may*, where appropriate, direct the person who removed or retained the child . . . to pay necessary expenses incurred by . . . the applicant." Hague Convention, art. 26 (emphasis added). This language is somewhat different from the language of ICARA[2], which provides that "[a]ny court ordering the return of a child [pursuant to the Hague Convention] *shall* order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." 42 U.S.C. § 11607(b)(3) (West 2005) (emphasis added).

---

[2] ICARA, codified at 42 U.S.C. § 11601 et seq., is designed to establish procedures for the implementation of the Hague Convention in the United States. 42 U.S.C. § 11601(b)(1).

Thus, ICARA shifts the burden onto a losing respondent in a Hague return action to show why an award of necessary expenses would be "clearly inappropriate." See Ozaltin, 708 F.3d at 375.

In its Ozaltin decision, the Second Circuit clarified that "a prevailing petitioner in a return action is presumptively entitled to necessary costs, subject to the application of equitable principles by the district court," directing lower courts to the equitable standards developed under the Copyright Act's discretionary fee award provision. Id.  In applying this standard, the district court "must exercise its equitable discretion, balancing a variety [of] factors, including frivolousness, motivation, objective unreasonableness (both in factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Psihoyos v. John Wiley & Sons, Inc., No. 11 Civ. 1416, 2013 WL 1285153, at *2 (S.D.N.Y. Mar. 29, 2013) (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994)).  In vacating this Court's earlier award of "any necessary costs [that the Father] incurred in connection with this action," the Second Circuit found that the Mother had maintained an objectively reasonable legal position throughout the case, and also noted concerns that, by bringing an action in this Court rather than before a Turkish court, the Father may have been forum-shopping, contrary to the purpose of the Hague Convention. Ozaltin, 708 F.3d at 375. The Second Circuit accordingly concluded that "it would be clearly inappropriate to award all necessary expenses associated with the Father's action under the Hague Convention." Id. at 377-78.  In light of the standards articulated in the Second Circuit opinion, this Court now determines "whether (and, if applicable, in what amount) to award costs" to the Father. See id.

Following the entry of the June 2012 Order, the Father sought reimbursement of the following expenses: $461,042.05 in legal fees for his American attorneys, Cohen Rabin Stine Schumann LLP ("CRSS"); $218,416.56 in legal fees for his Turkish attorney, Ms. Burcu Siratas,

and her firm Hukuk & Arastirma; and $17,797.64 in travel expenses, for air travel between Turkey and New York for himself, Ms. Siratas, and Professor Akipek Ocal, for a total of $697,256.25.  After the Second Circuit decision, this Court directed the Father to make a supplemental submission detailing any additional expenses for which he seeks reimbursement -- that is, for expenses incurred in connection with this action from June 16, 2012, to the present.  The Father documented the following additional expenses: $207,196.15 in legal fees for his attorneys at CRSS, and $40,652.77 in legal fees for a second law firm, Gusrae Kaplan Nusbaum PLLC ("GKN").  In total, the Father now seeks reimbursement of $945,105.16.

<u>The Mother had a Reasonable Basis for Removing the Children to the United States</u>

An award of fees against a party with an objectively reasonable litigation position generally will not promote the purpose of a discretionary statutory fee shifting provision.  <u>See</u> <u>Psihoyos</u>, 2013 WL 1285153, at *2.  Here, the Second Circuit found that a series of Turkish court orders implying that the children could live with the Mother in the United States gave the Mother "a reasonable basis for thinking at the time of removing the children to the United States in 2011 that her actions were consistent with Turkish law."  <u>Ozaltin</u>, 708 F.3d at 375.

The relevant chronology of this case is as follows.  On December 22, 2010, the Mother, acting without the Father's consent, removed the children from Turkey to the United States.  In January 2011, the Mother sought and received an <u>ex parte</u> order of protection against the Father and, in February 2011, she commenced divorce proceedings.  On May 13, 2011, the Third Family Court in Uskudar (the "Turkish Court") rejected the Father's request for "provisionary parental custody" but granted him visitation rights to see the children in the United States.  On July 28, 2011, the Turkish Court issued an order granting the Father a two-week

visitation period with the Children, from August 18, 2011, to September 1, 2011.  The Turkish Court clarified this order on August 12, 2011, explicitly allowing the Father to take the children out of the United States to visit him "in Turkey or in any other country" for the two-week period.  Accordingly, the children traveled to Turkey on August 18, 2011.  The Father improperly retained custody of the children past September 1, 2011, and did not return the children to the Mother until September 18, 2011, following a Turkish Court order finding that he had "behaved contrary to good will and intentions by not delivering the children [to their mother] on the appointed date."  After returning to the United States with the children in November 2011, the Mother denied the Father his previously granted visitation rights, stating that she would permit the Father to see the children only if he complied with a visitation condition that the Turkish Court had not imposed.  On March 30, 2012, the Turkish Court again rejected the Father's request for provisional custody of the children, but ordered a continuation of his visitation rights in the United States.  The Father subsequently commenced the instant Hague Convention action.

After reviewing the various Turkish Court orders, this Court finds that the Mother had a reasonable basis for believing that she could remove the children from Turkey and that, although such a mistake of law was not a defense to the return action itself, it is "a relevant equitable factor when considering whether a costs award is appropriate."  See Ozaltin, 708 F.3d at 375-76.  The Father contends that consideration of Turkish Court orders in assessing the reasonableness of the Mother's position is unavailing because the first Turkish Court order implying that the children could properly reside with the Mother in the United States was the May 13, 2011 Order, and the Mother's initial December 2010 removal of the children from Turkey was wrongful and unreasonable.  The Mother correctly argues, however, the Father did not file his Hague Convention petition in response to the initial December 2010 removal.

Rather, the instant petition was filed only in March 2012, months after Ms. Ozaltin had traveled to Turkey in August 2011 to facilitate the children's visit with their father and returned to the United States in November 2011.  By November 2011, the Turkish Court had issued its May 13, 2011 Order granting the Father visitation rights only in the United States, and two additional orders, dated September 8, 2011, and September 14, 2011, finding that the Father had acted in bad faith by retaining custody of the children beyond the specified visitation period and directing him to immediately return the children to their mother.  Accordingly, as the Second Circuit noted, the Mother "had a reasonable basis for thinking at the time of removing the children to the United States in 2011 that her actions were consistent with Turkish law."  Ozaltin, 708 F.3d at 375.

The Father next argues that, after returning to the United States with the children in November 2011, the Mother defied the Turkish Court's visitation order, and that this behavior weighs against any equitable mitigation of her liability for the Father's costs.  It is undisputed that, from November 2011 to April 2012, the Mother denied the Father his weekend visitation rights, stating that she would permit him to see the Children only if he complied with a condition (visiting the Children in the presence of a third-party) that the Turkish Court had not imposed.[3] On April 2, 2012, a few days after the Father filed his Hague Convention petition, this Court ordered the Mother to comply with the Turkish Court's visitation provisions, and she has since allowed the Father his visitation rights.  Having considered carefully the parties' actions in context, the Court concludes that the Mother's actions during the visitation dispute (an issue ancillary to the wrongful removal at the heart of this case) were not so unreasonable as to

---

[3]   The Mother imposed this additional visitation condition only after the Father had improperly retained custody of the children in Turkey beyond the Turkish Court's specified visitation period.

undermine her position that an award of costs in the Father's favor would be clearly inappropriate.

The Father's forum-shopping

The Second Circuit noted concerns that, by bringing an action in this Court, the Father may have been forum-shopping, contrary to the purpose of the Hague Convention. In the summer of 2011, during the children's temporary return to Turkey, the Father filed a petition with the Turkish Ministry of Justice to bar the Mother from removing the children from the country. The Ministry responded that, because the children were then in Turkey, no other procedure could be carried out in accordance with the Hague Convention. Ozaltin, 708 F.3d at 376. The Ministry instead directed the Father to make an application to the relevant Turkish court to "take the necessary measures to prevent the residential address of the children [from] be[ing] change[d]." Id. Rather than applying to the Turkish Court for such an order however, the Father waited until the children left Turkey and then filed the instant Hague petition. After this Court granted the Father's return petition, the Father returned to the Turkish Court and argued that this Court's order precluded the return of the children to the United States, despite the fact that the order clearly stated that it did not resolve the underlying custody dispute between the parties. (See June 2012 Order at 11, 13); see also 42 U.S.C. § 11601(b)(4) (West 2005) ("The Convention and this chapter empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims").

The Father argues that he did not initially seek a custody determination from the Turkish Court in part because he believed the Turkish Court would follow a policy of deference to the outcome of Hague Convention proceedings. (See Father's Memo of Law at 11 n. 13.)

This circular argument is meritless -- the Turkish Court deferred to the Hague Convention proceedings only after the Father filed his petition in this Court in March 2012. Nothing in the record indicates that, had the Father applied to the Turkish Court for a custody determination while the children were in Turkey in 2011, the Turkish Court would have declined to address the issue.

After considering carefully the various orders issued by the Turkish Court, this Court finds that the Mother had a reasonable basis for believing that she was entitled to bring the children back to the United States in November 2011. Additionally, the Court finds that, unlike the Mother, who "has consistently submitted to the jurisdiction of Turkish courts with respect to all divorce and child-custody matters," the Father appears to have engaged in forum-shopping by filing a Hague Convention petition in this district rather than seeking a custody determination from a Turkish Court as recommended by the Turkish Ministry of Justice in 2011. See Ozaltin, 708 F.3d at 376. Given the equitable nature of cost awards, the Court concludes that the Mother has met her burden of establishing that awarding any costs to the Father would be clearly inappropriate.[4]

CONCLUSION

---

[4] In light of this conclusion, the Court need not address the parties' arguments as to their respective financial situations, or the adequacy of the Father's documentation of his expenses. The Court notes, however, that even absent the equitable factors discussed above, the Father's request for almost $1 million in costs appears grossly excessive. See, e.g., Norinder v. Fuentes, 657 F.3d 526, 536 (7th Cir. 2011) (affirming district court's reduction of award from $170,000 to $150,000); Knigge ex rel. Corvese v. Corvese, No. 01 Civ. 5743, 2001 WL 883644, at *5 (S.D.N.Y. Aug. 6, 2011) (reducing request of $106,772.13 to $49,189.32); Whallon v. Lynn, No. Civ. A. 00-11009-RWZ, 2003 WL 1906174, at *2 (D. Mass. Apr. 18, 2003) (reducing "startlingly high" request of $64,866.17).

For the foregoing reasons, the Father's application for costs is denied. The Clerk of Court is respectfully requested to enter judgment denying the Father's application for costs and close this case.

SO ORDERED.

Dated: New York, New York
August 28, 2013

_____/S_____
LAURA TAYLOR SWAIN
United States District Judge